UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABDULSALAM OMAR,

       Plaintiff,                     Civil Action No. 20-CV-11845

vs.                             HON. BERNARD A. FRIEDMAN

KEY LAKES IV, INC., et al.,

       Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**and**

**GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE A SURREPLY**

This matter is presently before the Court on defendants' motion for summary judgment (ECF No. 13). Plaintiff has responded, defendants have replied, and plaintiff has filed a surreply.[1] Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion without a hearing. For the reasons stated below, the Court shall grant the motion in part and deny it in part.

This is a maritime tort case. Plaintiff is a former crewmember who worked for defendant Key Lakes IV, Inc. ("Key Lakes").[2] *See* Compl. ¶ 3. Plaintiff's complaint contains three

---

[1] Plaintiff has also filed a motion for leave to file a surreply (ECF No. 19), which remains pending.

[2] Although the caption of the complaint names "Key Lakes IV, Inc. and/or Keystone Shipping Co." as defendants, defendants note that "Keystone Shipping Co. was not the plaintiff's employer, was not the owner of the *M/V Great Republic*, and is not an appropriate party to this action. Key Lakes IV, Inc. was the plaintiff's employer and the operator of the vessel." Defs.' Br. at 1 n.1. Plaintiff agrees that Key Lakes is the "sole proper Defendant" in this case. Pl.'s Resp. Br. at 1.

claims:  (1) negligence, pursuant to the Jones Act, 46 U.S.C. § 30104;[3] (2) unseaworthiness, pursuant to general maritime law; and (3) failure to provide maintenance and cure, also pursuant to general maritime law.  Compl. ¶ 2.  For relief, plaintiff seeks compensatory damages.  *See id*. ¶ 5.  Before the Court is defendants' motion for summary judgment.

## I. Background

At the time of the underlying incident in this case, plaintiff was employed as a second cook in the galley department of a Great Lakes freighter named the M/V Great Republic ("Great Republic"), a position that he had held since 2016.  *See* Defs.' Br. at 1, 3.  Plaintiff's duties included cooking, cleaning the galley and mess hall, and handling the ship's stores.  *See* Defs.' Ex. A (Pl.'s Dep.) at 15-16.

Plaintiff alleges that

[o]n or about April 27, 2018, after [he] had been required to work more than 15 hours [in a 24-hour period] in violation of 46 [U.S.C. §] 8104(c), [he] was injured due to overexertion and handling boxes of stores in awkward positions, arising from . . . . [defendants' failure] to provide a safe place to work[] and [a] seaworthy vessel.

Compl. ¶ 4.  Plaintiff "usually worked twelve and a half hours from 0500 [a.m.] to 0630 [p.m.] [with an hour break]."  Pl.'s Resp. Br. at 7.  However, plaintiff testified that on the day in question, he reported to work at 2:00 a.m. to make space for a supply delivery, which was delivered between 2:30 a.m. and 2:40 a.m.  *See* Defs.' Ex. A (Pl.'s Dep.) at 38, 48.  Plaintiff further alleges that, after working for approximately two hours, he lifted a "french fries box and tried to put it in the freezer" when

---

[3] "The Jones Act provides a cause of action in negligence for any seaman injured in the course of his employment."  *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354 (1995) (internal quotation marks omitted).  Section 30104 states in relevant part: "A seaman injured in the course of employment . . . may elect to bring a civil action at law, with the right of trial by jury, against the employer."

"something popped [in his] back." *Id*. at 45, 56-57.  Plaintiff's injury occurred at or around 5:00 a.m.

on April 27, 2018.[4]  *See* Defs.' Ex. F (Pers. Inj. Rep.); Pl.'s Resp. Br. at 7.  When the vessel arrived

at its destination in Alpena, Michigan, he was sent to the hospital for treatment.  *See* Defs.' Ex A (Pl.'s

Dep.) at 56-57.

## II. Defendants' Motion for Summary Judgment

Defendants seek summary judgment on all of plaintiff's claims.  Defendants state that

"the lone, exclusive basis of [plaintiff's] claim against Key Lakes is based on his allegation that he was

required to work too many hours in violation of a work-rest rule."  Defs.' Br. at 9-10.  Defendants

contend that, although § 8104(c) does place "limitations on the hours of service and rest periods of

certain mariners aboard certain vessels," it "does not apply to the plaintiff or his vessel."  *Id*. at 10-11.

Section 8104(c) states in relevant part:

> On a towing vessel . . . operating on the Great Lakes . . . an individual
> in the deck or engine department may not be required to work more
> than eight hours in one day or permitted to work more than 15 hours
> in any 24-hour period, or more than 36 hours in any 72-hour period,
> except in an emergency when life or property are endangered.

Defendants argue that "[t]he plain language of the statute bars its application to the plaintiff for two

reasons.  First, the *Great Republic* is not a towing vessel.  Second, the plaintiff is not a member of the

deck or engine departments."  Defs.' Br. at 11.  As to the first point, defendants contend that "[t]he

*Great Republic* is a self-unloading bulk carrier.  It is not a towing vessel, as it is not in service of

pulling, pushing or hauling anything along side."[5]  *Id*. at 13.  As to the second point, defendants argue

---

[4] Because plaintiff allegedly began work at 2:00 a.m. on April 27, 2018, having worked twelve and a half hours the previous day with a 5:00 a.m. start time, by 5:00 a.m. on April 27 he would have worked more than 15 hours in a 24-hour period.

[5] Pursuant to 46 U.S.C. § 2101(50), "'towing vessel' means a commercial vessel engaged in or intending to engage in the service of pulling, pushing, or hauling along side, or any combination

that "it is undisputed that plaintiff is a member of the Galley Department (or Steward's Department

. . . )," not a member of the deck or engine department.[6] *Id*. at 14.  Because neither the vessel nor

plaintiff falls within the protections of § 8104(c), defendants contend that plaintiff's claim pursuant

to that statute fails as a matter of law.[7]

──────────────────────

of pulling, pushing, or hauling along side."

[6] The United States Coast Guard merchant mariner credentialing regulations define the deck, engine, and steward's departments as follows:

> *Deck department* means the department aboard a ship responsible for navigation, cargo, command, and control functions.

> \* \* \*

> *Engine department* means the department aboard a ship responsible for the main propulsion and auxiliary systems, and other mechanical, electrical, hydraulic, and refrigeration systems, including deck machinery and cargo-handling equipment.

> \* \* \*

> *Steward's department* means the department that includes entertainment personnel and all service personnel, including wait staff, housekeeping staff, and galley workers, as defined in the vessel security plan approved by the Secretary under 46 U.S.C. 70103(c). These personnel may also be referred to as members of the hotel department on a large passenger vessel.

46 C.F.R. § 10.107(b).

[7] Although not their central argument, defendants further contend that, according to the Great Republic's vessel log, *see* Defs.' Ex. C (Great Republic Vessel Log, Apr. 27, 2018), and the supply boat's vessel log, *see* Defs.' Ex. B (Soo Marine Supply Vessel Log, Apr. 27, 2018.), plaintiff's allegations are "physically impossible" because the Great Republic cannot take on supplies ahead of or while transiting locks.  Defs.' Br. at 15.  Defendants state that according to the vessel logs, the Great Republic did not clear the Soo Locks in Sault Ste. Marie, Michigan until 4:20 a.m. on April 27, 2018.  *Id*. at 4-5.  Defendants argue that if plaintiff was not, in fact, working at 2:00 a.m. on April 27, his hours that day fell short of the fifteen-hour work limitation established by § 8104(c), which would provide another basis for the Court to grant their requested relief as to Count I.  In response, plaintiff contends that a question of fact remains as to what time he was

Defendants next argue that even if plaintiff could establish a statutory basis for his Jones Act claim, the claim nonetheless fails because he "has not established that Key Lakes had notice and an opportunity to correct [the] allegedly hazardous condition." *Id*. at 17.  Defendants contend that "[i]t is a fundamental principle that, under the Jones Act, an employer must have notice and the opportunity to correct an unsafe condition before liability will attach." *Id*. (citing *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 599 (6th Cir. 2001)) (internal quotation marks omitted). Defendants state that handling stores was a routine aspect of plaintiff's job and a task that he was comfortable performing.  *See id.* at 18 (citing Defs.' Ex. A (Pl.'s Dep.) at 57-58).  Defendants add that plaintiff "never raised any concern to anyone aboard about any unsafe conditions or practices.  He never expressed any such concern to shoreside personnel.  He never expressed any concern to [his] union."  *Id*. at 18-19 (citing Defs.' Ex. A (Pl.'s Dep.) at 53-54, citations omitted).  Moreover, defendants contend that they cannot, as a matter of law, be held liable for plaintiff's "ordinary and routine maritime work." *Id*. at 19.  For these reasons, defendants argue that even if § 8104(c) did apply to the incident in question, they would still be entitled to summary judgment on Count I.

Finally, defendants argue that plaintiff's claims under general maritime law also fail. Defendants contend that "[i]n order to recover under the doctrine of unseaworthiness, a seaman must prove the existence of an unseaworthy condition, i.e., that some aspect of the vessel, appurtenances, or crew was not reasonably fit for their intended purpose, and that such unseaworthy condition proximately caused the seaman's injury." *Id*. at 23.  Here, defendants argue, "plaintiff testified that other than the issue with his work hours, the company and his crew mates did nothing that caused his accident." *Id*. (citing Defs.' Ex. A (Pl.'s Dep.) at 59).  As to plaintiff's claim of maintenance and cure,

called to work.  *See* Pl.'s Resp. Br. at 6.

defendants state that

> [u]nder general maritime law, seamen that suffer illness or injury on the job are entitled to maintenance and cure benefits.  Maintenance is a shipowner's obligation to provide a mariner with food and lodging if he becomes injured or falls ill while in service of the ship. Cure is the shipowner's duty to provide necessary medical care and attention to an injured crew member.

*Id*. at 24 (citation omitted).  Here, defendants contend, "plaintiff has not presented any evidence that there are maintenance and cure benefits to which the plaintiff is legally entitled that Key Lakes has not paid.  Nor can plaintiff present any such evidence."  *Id*.  Defendants argue that summary judgment is therefore warranted as to Counts II and III of the complaint.

In response, plaintiff changes tack, arguing not that he worked excessive hours on April 27, 2018, but rather that the galley department was understaffed in violation of the union-negotiated collective bargaining agreement ("CBA"), defendants' duty of care under the Jones Act, and the seaworthiness doctrine under general maritime law.  *See* Pl.'s Resp. Br. at 5.  Plaintiff contends that while the CBA requires a four-man galley or steward's department, "[i]n the present case, there was a two-man galley, Plaintiff (Second Cook), and Doug Rogers (Steward), no Chief Cook and no Steward's Assistant."  *Id*.  Plaintiff states that at the time of the incident, he was attempting to complete two separate work activities at the same time – unloading stores and preparing breakfast.  *See id*. at 1, 5.  He argues that

> [h]ad a Steward Assistant been onboard, he would have been participating in putting the stores away with Plaintiff at the time of his injury and Plaintiff would not ha[ve] been pressured into the conundrum of storing supplies in a rush when he would have otherwise been preparing for breakfast . . . .

*Id*. at 5 (citation omitted).  Plaintiff notes that he raised his concerns regarding the lack of adequate assistance in his pre-deposition interrogatory answers as follows:

Interrogatory No. 8: Without reference to the complaint, please describe each instance in which you claim Key Lakes IV, Inc., Keystone Shipping Company, or their employees were negligent in connection with the accident.

**ANSWER: More assistance in the galley would have helped prevent the injury, because for over two hours I was constantly picking up heavy items without any break, and I was extremely exhausted, having worked & been up many hours.**

Interrogatory No. 9: Without reference to the complaint, please describe all manners in which you claim the M/V Great Republic was unseaworthy.

**ANSWER: See Answer to Interrogatory No. 8.**

*Id*. (quoting Pl.'s Ex. B (Pl.'s Answers to Interrog. Nos. 8 & 9), emphasis in original).

Plaintiff further argues that although he was injured while performing "otherwise routine storage work," the "hazard[s] increased as time wore on" because

he (1) had previously worked long – in excess of twelve – hours, (2) was tired, (3) was rushed, (4) was in need of assistance, (5) had to previously spend 30-45 minutes rotating stores that should have been done the day before, [and] (6) . . . was supposed to be preparing for breakfast at the same time.

*Id*. at 12. Plaintiff adds that "neither actual nor constructive notice is essential to liability" under the seaworthiness doctrine, and that, regardless, defendant Key Lakes was on notice because it "is party to the CBA requiring a four-man Steward's Department." *Id*. at 15. Plaintiff therefore argues that defendants' motion for summary judgment should be denied.

In reply, defendants contend that

contrary to the plaintiff's unsubstantiated allegation, there is simply no language in the 2016 Collective Bargaining Agreement that requires Key Lakes to maintain a four-person Steward's Department. Although the Collective Bargaining Agreement does set forth the duties and compensation structure of various possible ratings in the Steward's Department, the agreement does not require Key Lakes to carry crew members in all four ratings set forth in the agreement. No vessel in the

7

> Key Lakes Great Lakes Fleet carries four crew members to outfit the
> Steward's Department.  In fact, no Great Lakes operator carries four
> crew members to man their Galley or Steward's Departments.

Defs.' Reply Br. at 3-4 (citations omitted).  Defendants further argue that "plaintiff's concession that

he did not ask for additional assistance conclusively establishes that he did not feel he needed such

additional assistance.  This contradicts all of his new allegations that he required additional assistance."

*Id*. at 6 (citing Ex. A (Pl.'s Dep.) at 57-58).  Defendants contend that plaintiff's contradictory

statements and "erroneous legal argument" do not create a genuine issue for trial.  *Id*. at 7.

**III. Analysis**

**A. Abandonment of Count III (Failure to Provide Maintenance and Cure)**

As a threshold matter, "a party may abandon claims by failing to address or support

them in a response to a motion for summary judgment."  *Bauer v. Cnty. of Saginaw*, 111 F. Supp. 3d

767, 782 (E.D. Mich. 2015) (citing *Clark v. City of Dublin, Ohio*, 178 F. App'x 522, 524-25 (6th Cir.

2006)).  *See also Cruz v. Capital One, N.A.*, 192 F. Supp. 3d 832, 838-39 (E.D. Mich. 2016) ("A

plaintiff abandons undefended claims.").  Here, plaintiff has failed to defend Count III – failure to

provide maintenance and cure under general maritime law.  "The Court will thus deem [Count III]

abandoned, and Defendants' motion for summary judgment will be granted with respect to that claim."

*Bauer*, 111 F. Supp. at 782.  Accordingly, the only claims that remain at issue are Counts I and II –

negligence under the Jones Act and unseaworthiness under general maritime law, respectively.

**B. Summary Judgment as to Count I (Negligence) and Count II (Unseaworthiness)**

In deciding a motion for summary judgment, the Court

> must view the evidence in the light most favorable to the party
> opposing the motion for summary judgment. *Kirilenko-Ison v. Bd. of
> Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020).
> "This includes drawing 'all justifiable inferences' in the nonmoving
> party's favor." *George*, 966 F.3d at 458 (quoting *Anderson v. Liberty

> *Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202
> (1986)). "[T]he judge's function is not himself to weigh the evidence
> and determine the truth of the matter but to determine whether there is
> a genuine issue for trial." *Jackson[ v. VHS Detroit Receiving Hosp.,
> Inc.*, 814 F.3d 769, 775] (quoting *Anderson*, 477 U.S. at 249, 106 S. Ct.
> 2505).

*Strickland v. City of Detroit*, 995 F.3d 495, 503 (6th Cir. 2021).

> Under the Jones Act,
>
> an employer has a duty to provide a safe workplace for its employees.
> To recover for injuries caused by the alleged negligence of an
> employer . . . , a plaintiff must show that [his] employer failed to
> provide a safe workplace by neglecting to cure or eliminate obvious
> dangers of which the employer or its agents knew or should have
> known and that such failure caused the plaintiff's injuries and
> damages.

*Rannals v. Diamond Jo Casino*, 265 F.3d 442, 449 (6th Cir. 2001). "Once a plaintiff establishes that

the employer breached his or her duty of care, however, the plaintiff need not establish proximate

causation but only show that the defendant's actions, however slight, contributed in some way toward

causing the plaintiff's injuries." *Churchwell v. Bluegrass Marine, Inc.*, 444 F.3d 898, 907-08 (6th Cir.

2006) (internal quotation marks omitted). *See also Musleh v. Am. Steamship Co.*, 326 F. Supp. 3d 507,

518 (E.D. Mich. 2018) (stating that under the Jones Act, "[a] seaman need only prove slight negligence

by his employer . . . [and that] the test for causation . . . is not the strict measure of proximate cause

but a more lenient measure of legal cause") (internal quotation marks and citations omitted).

"An unseaworthiness claim under maritime common law is separate from a Jones Act

negligence claim. . . .  General maritime law imposes a duty upon shipowners to provide a seaworthy

vessel that is independent from the duty to provide a reasonably safe workplace imposed by the Jones

Act." *Id.* "[U]nseaworthiness is a condition, and how that condition came into being—whether by

negligence or otherwise—is quite irrelevant to the owner's liability for personal injuries resulting from

it." *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 498 (1971).  In distinguishing the doctrine

of unseaworthiness from that of negligence, the Supreme Court has stated that

> the libelant ha[s] a right of indemnity for injuries arising from an
> unseaworthy ship even [if] there was no means of anticipating trouble.
> . . . [U]under the maritime law there is an absolute obligation to
> provide a seaworthy vessel and, in default thereof, liability follows for
> any injuries caused by breach of the obligation.

*Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 548 (1960) (quoting *The H.A. Scandrett*, 87 F.2d 708,

711 (2d Cir. 1937)).

> The Sixth Circuit has further explained that
>
> [a] ship owner is strictly liable for personal injuries caused by his or
> her vessel's unseaworthiness.  A vessel is unseaworthy if the vessel
> and its appurtenances are not reasonably fit for their intended use.
> Defective gear, an unfit or understaffed crew, or the use of an improper
> method of storage or unloading cargo all render a vessel unseaworthy.
> . . .  Generally, unseaworthiness is a question of fact for the jury and
> should not be resolved by the district court as a matter of law.
>
> To prevail on an unseaworthiness claim, a plaintiff must establish that
> a vessel's unseaworthy condition was the proximate cause of his or her
> injuries.  A vessel's unseaworthiness is the proximate cause of a
> plaintiff's injuries if it was a substantial factor in causing such injuries.
> In other words, unseaworthiness proximately causes an injury if it
> played a substantial part in bringing about or actually causing the
> injury and the injury was either a direct result or a reasonably probable
> consequence of unseaworthiness.

*Churchwell*, 444 F.3d at 904 (internal quotation marks and citations omitted).

"A seaman's claim under either the Jones Act or the unseaworthiness doctrine is

fundamentally a single cause of action, and remedies under one must be congruent with remedies

under the other.  If no damages are permitted under the Jones Act, then an unseaworthiness claim

cannot supply them either."  *Szymanski v. Columbia Transp. Co.*, 154 F.3d 591, 596-97 (6th Cir.

1998).  "Although standards for affixing liability may differ (the Jones Act requires negligence, but

10

has a relaxed standard of causation, while unseaworthiness claims rest on strict liability but require traditional proximate cause), the liability must be due to a compensable injury." *Id.* at 596-97.

Plaintiff's interrogatory answers and response brief demonstrate the presence of genuine issues of material fact as to both Counts I and II. Regarding Count I, plaintiff's negligence claim, questions remain as to (1) whether, by staffing the galley department with only two crew members, Key Lakes failed to provide a safe workplace; (2) whether Key Lakes was or should have been aware of the obvious dangers created by a two-person galley department; and, (3) if so, whether Key Lakes' negligence in some way contributed to plaintiff's back injury. Regarding Count II, plaintiff's claim of unseaworthiness, questions remain as to (1) whether the two-person galley department rendered the Great Republic short-staffed and therefore unseaworthy; and, (2) if so, whether the personnel shortfall proximately caused plaintiff's back injury.

Defendants correctly note that the CBA does not expressly require a four-person galley or steward's department. In addition to the language of the CBA, this assertion is backed by testimony from the Great Republic's steward, Doug Rogers, and Key Stone Vice President, Tim Callahan, both of whom stated that four-person galley departments are rare, or even nonexistent, aboard vessels on the Great Lakes. *See* Pl.'s Ex. D (Rogers Dep.) at 3; Defs.' Ex. G (Callahan Dep.).

However, Article VI, Section 1 of the CBA clearly delineates four categories of duties within the "Steward's Department" – those of the steward, chief cook, second cook, and steward assistant. *See* Pl.'s Ex. E (CBA). Further, Article VI, Section 13 describes certain circumstances or activities which require "the full complement of the Steward's Department" and others for which the department may be reduced to the "steward, second cook and one less porter than the normal complement." *Id*. This latter section seems to imply that a two-person galley or steward's department, consisting of only the steward and second cook, does not constitute a fully-staffed galley department.

11

"[W]hen the facts and any inferences reasonably drawn from them [are viewed] in the light most favorable to [plaintiff]," *Jackson*, 814 F.3d at 784 (internal quotation marks omitted), a reasonable jury could conclude that on April 27, 2018, the Great Republic was understaffed – a decision that may have breached Key Lakes' duty of care and a condition that, as the Sixth Circuit has recognized, may render a vessel unseaworthy. *See Churchwell*, 444 F.3d at 904. Therefore, Counts I and II cannot be resolved on summary judgment. Accordingly,

IT IS ORDERED that defendants' motion for summary judgment (ECF No. 13) is granted in part and denied in part as follows: Defendants' motion as to Count III (failure to provide maintenance and cure) is granted. Defendants' motion as to Count I (negligence) and Count II (unseaworthiness) is denied.

IT IS FURTHER ORDERED that plaintiff's motion for leave to file a surreply (ECF No. 19) is granted.

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated: December 1, 2021
    Detroit, Michigan

12